Citation Nr: 1829334 
Decision Date: 05/24/18 Archive Date: 06/12/18

DOCKET NO. 09-46 185 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES


1. Entitlement to an effective date earlier than February 28, 2008, for the grant of service connection for a left hip scar associated with degenerative joint disease of the left hip.

2. Entitlement to an effective date earlier than June 16, 2005, for the assignment of a separate 10 percent rating for degenerative joint disease of the left hip.

3. Entitlement to an effective date earlier than June 16, 2005, for the assignment of a separate 10 percent rating for degenerative joint disease of the right hip.

4. Entitlement to an effective date earlier than June 16, 2005, for a separate disability rating for degenerative joint disease of the lumbar spine.

5. Entitlement to a rating higher than 20 percent for degenerative arthritis of the cervical spine.

6. Entitlement to an initial compensable rating for costochondritis.

7. Entitlement to service connection for a right hand disorder, to include as secondary to the service-connected degenerative arthritis of the cervical spine and residuals of a fracture of the right ring finger.

8. Entitlement to service connection for a right elbow disorder, to include as secondary to the service-connected degenerative arthritis of the cervical spine and residuals of a fracture of the right ring finger.

9. Entitlement to an initial rating higher than 10 percent for a left hip scar associated with left hip degenerative joint disease.

10. Entitlement to a rating higher than 10 percent prior to January 14, 2014, and 30 percent since March 1, 2015 for left total hip arthroplasty (previously rating as degenerative joint disease of the left hip).

11. Entitlement to a rating higher than 10 percent prior to September 9, 2010, and 30 percent since November 1, 2011for right total hip arthroplasty (previously rating as degenerative joint disease of the right hip).

12. Entitlement to a rating higher than 10 percent for degenerative joint disease of the lumbar spine.

13. Entitlement to a compensable rating for residuals of a fracture of the right ring finger.

14. Entitlement to a rating higher than 10 percent for residuals of a hallux surgery of the left foot.

15. Entitlement to a compensable rating for right ear hearing loss disability .

16. Entitlement to a total disability rating based on individual unemployability (TDIU).


ATTORNEY FOR THE BOARD

J. Meawad, Counsel


INTRODUCTION

The Veteran served on active duty from August 1980 to January 1997. 

This matter comes to the Board of Veterans' Appeals from a June 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. 

In October 2014, the Board remanded the case for further development. Since the requested development has not been fully completed, further action to ensure compliance with the remand directive is required. Stegall v. West, 11 Vet. App. 268 (1998).

The Board notes that pursuant to the October 2014 remand, a statement of the case was issued in April 2017 for the issues of whether there is clear and unmistakable error (CUE) in a May 1997 rating decision assigning a 20 percent disability rating for degenerative joint disease of the hips and lumbar spine, assigning a zero percent disability rating for residuals of a fracture of the right ring finger, assigning a zero percent disability rating for residuals of a hallux surgery of the left foot and assigning a zero percent disability rating for right ear hearing loss. There is no indication, however, that the Veteran perfected an appeal as to these issues. Thus, these issues are not before the Board for appellate consideration. See 38 C.F.R. § 20.200. 

The issues of service connection for a right hand disability and right elbow disability, higher ratings for degenerative joint disease of the lumbar spine and right ring finger, and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).
FINDINGS OF FACT

1. The objective medical evidence of record reflects that the Veteran did not have a left hip scar until February 28, 2008, which is later in time than the date of receipt of the Veteran's claim for an increased rating for the left hip.

2. In the June 2008 rating decision on appeal, the Veteran was not awarded any benefits on which to base an earlier effective date for the issues of entitlement to a higher rating for degenerative joint disease of the left hip, degenerative joint disease of the right hip, and degenerative joint disease of the lumbar spine.

3. The Veteran asserted a freestanding claim seeking an effective date prior to June 16, 2005, for the 10 percent rating for degenerative joint disease of the left hip.

4. The Veteran asserted a freestanding claim seeking an effective date prior to June 16, 2005, for the 10 percent rating for degenerative joint disease of the right hip.

5. The Veteran asserted a freestanding claim seeking an effective date prior to June 16, 2005, for the 10 percent rating for degenerative joint disease of the lumbar spine.

6. The Veteran's degenerative arthritis of the cervical spine has been manifested by no less than forward flexion of 25 degrees during the entire appellate period.

7. The Veteran's service-connected costochondritis is manifested by slight muscle group XXI function impairment and pulmonary function findings, at worst, of FEV-1 of 83 percent predicted, FEV-1/FVC of 82 percent, and DLCO of 100 percent. 

8. The Veteran's left hip scar is 16.5 cm by 0.3 cm and is not painful or unstable.

9. Prior to January 14, 2014, the Veteran's left hip disability was manifested by limitation of motion at worst to 0 degrees extension, 50 degrees flexion, 15 degrees abduction, 10 degrees adduction, 10 degrees internal rotation, and 35 degrees external rotation. Pain was noted throughout motion testing.

10. From March 1, 2015, the Veteran's left hip disability is manifested by moderately severe residuals of weakness, pain and limitation of motion. 

11. Prior to September 9, 2010, the Veteran's right hip disability was manifested by normal range of motion. 

12. From November 1, 2011, the Veteran's right hip disability was not manifested by moderately severe residuals of weakness, pain and limitation of motion. 

13. From January 9, 2018, the Veteran's right hip disability is manifested by moderately severe residuals of weakness, pain and limitation of motion.

14. The Veteran's service-connected residuals of a hallux surgery of the left foot is manifested by resection of metatarsal head and postoperative osteoarthritis of the left first metatarsophalangeal joint.

15. The Veteran's service-connected right ear hearing loss disability is manifested, at worst, by an average puretone threshold of 16.25 decibels with speech recognition ability of 100 percent. 


CONCLUSIONS OF LAW

1. The criteria for an effective date prior to February 28, 2008, for the grant of service connection for a left hip scar, have not been met. 38 U.S.C. §§ 5101, 5110, 7104 (2012); 38 C.F.R. §§ 3.1(p), 3.155, 3.400, 4.16 (2017).

2. The Board has no authority to adjudicate a freestanding claim for an effective date earlier than June 16, 2005, for a 10 percent rating for degenerative joint disease of the left hip. 38 U.S.C. §§ 7105 (2012); Rudd v. Nicholson, 20 Vet. App. 296 (2006).

3. The Board has no authority to adjudicate a freestanding claim for an effective date earlier than June 16, 2005, for the grant of a separate 10 percent rating for degenerative joint disease of the right hip. 38 U.S.C. §§ 7105 (2012); Rudd v. Nicholson, 20 Vet. App. 296 (2006).

4. The Board has no authority to adjudicate a freestanding claim for an effective date earlier than June 16, 2005, for the grant of a separate 10 percent rating for degenerative joint disease of the lumbar spine. 38 U.S.C. §§ 7105 (2012); Rudd v. Nicholson, 20 Vet. App. 296 (2006).

5. The criteria for a disability rating higher than 20 percent for degenerative arthritis of the cervical spine, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.71a, Diagnostic Codes 5003-5240 (2017).

6. The criteria for an initial compensable rating for service-connected costochondritis have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.73, 4.97, Diagnostic Codes 5003-5240 (2017).

7. The criteria for a rating higher than 10 percent for a left hip scar have not been met. 38 U.S.C.A. §§ 1155, 5107 (2012); 38 C.F.R. § 4.118, Diagnostic Code 7804 (2008).

8. Prior to January 14, 2014, the criteria for a rating higher than 10 percent for service-connected left total hip arthroplasty have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 38 C.F.R. §§ 3.159, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5003 (2017).

9. From March 1, 2015, the criteria for a 50 percent rating for service-connected left total hip arthroplasty have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 38 C.F.R. §§ 3.159, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5054 (2017).


10. Prior to September 9, 2010, the criteria for a rating higher than 10 percent for service-connected right total hip arthroplasty have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 38 C.F.R. §§ 3.159, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5003 (2017).

11. From November 1, 2011 to January 8, 2018, the criteria for a rating higher than 30 percent for service-connected right total hip arthroplasty have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 38 C.F.R. §§ 3.159, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5054 (2017).

12. From January 9, 2018, the criteria for a 50 percent rating for service-connected left total hip arthroplasty have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 38 C.F.R. §§ 3.159, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5054 (2017).

13. The criteria for a rating higher than 10 percent for service-connected residuals of a hallux surgery of the left foot have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 38 C.F.R. §§ 3.159, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5280 (2017).

14. The criteria for an initial compensable disability rating for the service-connected right ear hearing loss disability have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Neither the Veteran, nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board... to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

I. Earlier Effective Date

A. Left hip scar

The Veteran seeks an effective date earlier than February 28, 2008, for the award of service connection for a left hip scar. 

The effective date for an award of service connection based on an original claim generally "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a). The statutory provision is implemented by regulation, which provides that the effective date for an evaluation for disability compensation is the "date of receipt of the claim or the date entitlement arose, whichever is the later." 38 C.F.R. § 3.400. 

The effective date for an award of direct service connection may be established on the day following separation from service or the date entitlement arose, if the claim is received within one year of separation from service; otherwise, the general rule applies. 38 U.S.C. § 5110(b)(1); 38 C.F.R. § 3.400(b)(2)(i).

A "claim" is defined broadly to include a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. See 38 C.F.R. § 3.1 (p). With respect to informal claims, the Board is aware that this case predates the changes to 38 C.F.R. § 3.155, and therefore the older version of the regulation applies. Under the former § 3.155, any communication or action indicating an intent to apply for one or more benefits under the laws administered by VA may constitute an informal claim, provided that such informal claim identify the benefit sought. 38 C.F.R. § 3.155 (a). To determine when a claim was received, the Board must review all communications in the claim file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129, 134 (1992).

The basic facts are not in dispute. The Veteran's claim for a higher rating for the left hip was received in September 2007, and the Veteran does not contend otherwise. The RO granted service connected for a left hip scar in the June 2008 rating decision on appeal and assigned an effective date of February 28, 2008, the date the Veteran underwent a left hip surgery. 

Objective medical evidence shows that the Veteran's left hip scar is associated with the left hip surgery that he underwent in February 2008. See VA examination dated March 2008. Reviewing the medical evidence prior to February 28, 2008, the Board finds that there is no evidence of a left hip scar. While the Board notes that the Veteran's claim was received in September 2007, the applicable law and regulations provide that it is the later of the date of receipt of the claim or the date entitlement arose which is controlling. Thus, the Board finds that February 28, 2008, is the appropriate effective date for the award of service connection for the left hip scar. 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400.

As there is no legal basis for assignment of any earlier effective date, and because the preponderance of the evidence is against the claim for any earlier effective date, the Board finds that the claim must be denied. 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

B. Degenerative joint disease of the left hip, degenerative joint disease of the right hip, and degenerative joint disease of the lumbar spine

In a November 2005 rating decision, the RO granted separate 10 percent ratings for degenerative joint disease of the left hip, degenerative joint disease of the right hip, and degenerative joint disease of the lumbar spine and assigned an effective date of June 16, 2005. The Veteran was notified of this rating action in a notice letter dated in November 2005. The Veteran did not perfect an appeal regarding the assignment of the effective date. 

In September 2007, the Veteran submitted a claim for a higher rating for degenerative joint disease of the left hip, degenerative joint disease of the right hip, and degenerative joint disease of the lumbar spine. In the June 2008 rating decision on appeal the RO continued the 10 percent ratings for those disabilities.

As the appellant did not perfect an appeal of the November 2005 rating decision, it has become final prior to the Veteran's current September 2007 claim. 38 C.F.R. § 20.1103. An unappealed rating decision, however, becomes final only in the absence of clear and unmistakable error (CUE). 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a). The Board notes that the Veteran has not filed a motion to revise the November 2005 rating decision based on CUE even with a sympathetic reading of the record.

In the June 2008 rating decision on appeal, the Veteran was not awarded any benefits on which to base an earlier effective date for the issues of entitlement to a higher rating for degenerative joint disease of the left hip, degenerative joint disease of the right hip, and degenerative joint disease of the lumbar spine. In that decision, the RO continued the assigned ratings for degenerative joint disease of the left hip, degenerative joint disease of the right hip, and degenerative joint disease of the lumbar spine. The RO did grant a temporary total rating for the convalescence for the left hip; however, the Veteran did not claim an earlier effective date for that rating. An earlier effective date may be granted for a benefit awarded. See 38 U.S.C. § 5110. As no benefit was awarded in the June 2008 rating decision for the issues of entitlement to a higher rating for degenerative joint disease of the left hip, degenerative joint disease of the right hip, and degenerative joint disease of the lumbar spine, an earlier effective date is not allowed.

The only remaining possibility in this case is for the claim to be processed as some form of freestanding claim for earlier effective dates. However, a freestanding claim for an earlier effective date is not a proper claim subject to adjudication. Rudd v. Nicholson, 20 Vet. App. 296 (2006). Rather, it is instead appropriate to dismiss such a "claim" because it cannot be entertained. Id. Therefore, the Veteran's claim for entitlement to earlier effective date must be dismissed.

II. Higher Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2017). The Rating Schedule is primarily a guide in the evaluation of disabilities resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. §§ 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). 

A. Cervical spine

The Veteran's service-connected cervical spine disability is currently rated 20 percent under 38 C.F.R. § 4.71a, Diagnostic Codes 5003-5240. Spine disabilities are evaluated under Diagnostic Codes 5235 to 5243 using the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula) unless evaluating using the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based On Incapacitating Episodes (Formula for Rating IVDS).

Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 C.F.R. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity or disuse atrophy. Under 38 C.F.R. § 4.59, painful motion is an important factor of disability from arthritis and actually painful joints are entitled to at least the minimum compensable rating for the joint.

Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. §§ 4.40 and 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). Within this context, a finding of functional loss due to pain must be supported by adequate pathology, and evidenced by the visible behavior of the claimant. Johnston v. Brown, 10 Vet. App. 80, 85 (1997).

Under the General Rating Formula, the criteria for a rating of 10 percent are forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. The criteria for a rating of 20 percent are forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. The criteria for a 30 percent rating are forward flexion of the cervical spine to 15 degrees or less; or favorable ankylosis of the entire cervical spine. The criteria for a 40 percent rating are unfavorable ankylosis of the entire cervical spine. The criteria for a 100 percent rating are unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula. Any associated objective neurologic abnormalities are evaluated separately under an appropriate Diagnostic Code. Id. at Note (1).

Under the Formula for Rating IVDS, incapacitating episodes having a total duration of at least one week, but less than two weeks during 12 months are rated at 10 percent. Incapacitating episodes having a total duration of at least two weeks, but less than four weeks during 12 months are rated at 20 percent. Incapacitating episodes having a total duration of at least four weeks, but less than six weeks during 12 months are rated at 40 percent. Incapacitating episodes having a total duration of at least six weeks during 12 months are rated at 60 percent. 38 C.F.R. § 4.71a, Formula for Rating IVDS. An incapacitating episode is a period of acute signs and symptoms that requires bed rest prescribed by a physician and treatment by a physician. Id. at Note (1). 

The evidence does not demonstrate that the Veteran had limitation of motion that would result in a disability rating higher than 20 percent. During treatment in September 2007, it was noted that the Veteran was doing well with no current symptoms associated with the cervical spine. During the March 2008 VA examination, active range of motion testing of the Veteran's cervical spine revealed forward flexion to 25 degrees, extension to 25 degrees, right lateral flexion to 30 degrees, left lateral flexion to 30 degrees, right lateral rotation to 35 degrees, and left lateral rotation to 35 degrees. There were no muscle spasms, guarding or atrophy noted. During the January 2018 VA examination, the Veteran's complained of daily diffuse stiffness and right side posterior neck pain. Range of motion testing revealed, at worst, forward flexion to 35 degrees, extension to 30 degrees, right lateral flexion to 35 degrees, left lateral flexion to 35 degrees, right lateral rotation to 65 degrees, and left lateral rotation to 65 degrees when considering repetitive use and flare ups. There was pain noted on all movements and tenderness due to residuals of posterior decompression and fusion. There was no change in range of motion or function with repetitions. 

At no point during the appellate period does the evidence of record demonstrate forward flexion of the cervical spine less than 15 degrees and there is also no evidence of ankylosis, favorable or unfavorable, of the cervical spine. As such, the Board finds that a rating higher than 20 percent for the Veteran's service-connected degenerative arthritis of the cervical spine is not warranted under the General Rating Formula. 38 C.F.R. § 4.71a, Diagnostic Code 5242.

The Board has also determined that the assignment of a higher rating is not warranted under the Formula for Rating IVDS, as treatment records and the March 2008 and January 2018 VA examinations do not document IVDS with incapacitating episodes having a total duration of at least two weeks but less than four weeks at any point during the appeal period. In fact, the Veteran has not been diagnosed as having IVDS at any time during the appellate period.

The Board further finds that there is no basis for the assignment of a higher rating based on consideration of functional loss of the cervical spine. 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); Deluca v. Brown, 8 Vet. App. 202, 204-06 (1995); Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011). The Board has considered the factors regarding pain and functional loss. During the January 2018 VA examination, the Veteran reported that his pain limits activities of daily living such a turning his head while driving. Also, pain and fatigue were noted to cause functional loss. However, although the Veteran has some limitations caused by pain and fatigue, the evidence does not show that it amounts to limitation of flexion to 15 degrees or ankylosis warranting the assignment of any increased evaluation. Therefore, the evidence reflects that the 20 percent rating properly compensates him for the extent of functional loss resulting from symptoms like painful motion and fatigability.

In accordance to Note 1 under the General Rating Formula for Diseases and Injuries of the Spine, any associated objective neurologic abnormalities are evaluated separately under an appropriate Diagnostic Code. The Board finds that the evidence does not support a finding for separate evaluations for neurologic abnormalities as the Veteran did not exhibit neurological abnormalities related to the cervical spine at any time during the appellate period. Specifically, neurological testing was negative during the January 2018 VA examination. 38 C.F.R. § 4.71a, General Rating Formula, Note (1). 

In sum, the preponderance of the evidence is against a disability rating higher than 20 percent for service-connected degenerative arthritis of the cervical scar. 

B. Costochondritis

In the June 2008 rating decision on appeal, the Veteran was granted service connection for costochondritis and was assigned a noncompensable rating under Diagnostic Codes 5321-6604 and was assigned an effective date of September 10, 2007. 38 C.F.R. §§ 4.73, 4.97. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen.

The rating schedule does not provide a specific diagnostic code for costochondritis, so the Veteran's costochondritis has been rated analogously under Diagnostic Code 5321 for an injury to Muscle Group XXI, the muscles of respiration of the thoracic muscle group. 38 C.F.R. § 4.73, Diagnostic Code 5321. Costochondritis is an "inflammation and associated tenderness of the cartilage (i.e., the costochondral joints) that attaches the front of the ribs to the breastbone." Gale Encyclopedia of Medicine (4th ed. 2012).

Diagnostic Code 5321 provides a noncompensable (zero percent) rating for slight muscle injury, a 10 percent evaluation for a moderate muscle injury, and a 20 percent evaluation for a severe or moderately severe muscle injury. 38 C.F.R. § 4.73, Diagnostic Code 5321.

For VA rating purposes, the cardinal signs and symptoms of muscle disability are loss of power, weakness, lowered threshold of fatigue, fatigue-pain, impairment of coordination, and uncertainty of movement. 38 C.F.R. § 4.56 (c).

Evaluation of muscle injuries as slight, moderate, moderately severe, or severe, is based on the type of injury, the history and complaints of the injury, and objective findings. 38 C.F.R. § 4.56 (d).

A "slight" muscle disability contemplates a simple wound of the muscle without debridement or infection; a service department record of a superficial wound with brief treatment and return to duty; healing with good functional results; and no cardinal signs or symptoms of muscle disability. Objectively, there is a minimal scar; no evidence of fascial defect, atrophy, or impaired tonus; and no impairment of function or metallic fragments retained in muscle tissue. 38 C.F.R. § 4.56 (d)(1).

"Moderate" muscle disability contemplates a through and through or deep penetrating wound of short track from a single bullet, small shell, or shrapnel fragment, without the explosive effect of a high velocity missile, residuals of debridement, or prolonged infection; a service department record or other evidence of in-service treatment for the wound; and a record of consistent complaint of one or more of the cardinal signs and symptoms of muscle disability, particularly lowered threshold of fatigue after average use, affecting the particular functions controlled by the injured muscles. Objectively, there are entrance and (if present) exit scars that are small or linear, indicating a short track of missile through muscle tissue; and some loss of deep fascia or muscle substance or impairment of muscle tonus and loss of power or lowered threshold of fatigue when compared to the sound side. 

"Moderately severe" muscle disability contemplates a through and through or deep penetrating wound by a small high velocity missile, or large low-velocity missile, with debridement, prolonged infection, or sloughing of soft parts, and intermuscular scarring; a service department record or other evidence showing hospitalization for a prolonged period for the wound; a record of consistent complaint of cardinal signs and symptoms of muscle disability; and, if present, evidence of inability to keep up with work requirements. Objectively, there are entrance and (if present) exit scars indicating track of missile through one or more muscle groups; indications on palpation of loss of deep fascia, muscle substance, or normal firm resistance of muscle compared with the sound side; and tests of strength and endurance compared with the sound side demonstrate positive evidence of impairment. 38 C.F.R. §§ 4.56 (d)(3).

The Veteran's respiratory disability is currently rated under 38 C.F.R. § 4.97, Diagnostic Code 6604, which evaluates chronic obstructive pulmonary disease. Forced Expiratory Volume in one second (FEV-1) of 71- to 80-percent predicted value, or; the ratio of Forced Expiratory Volume in one second to Forced Vital Capacity (FEV-1/FVC) of 71 to 80 percent, or; Diffusion Capacity of the Lung for Carbon Monoxide by the Single Breath Method (DLCO (SB)) is 66- to 80-percent predicted, is rated 10 percent disabling. FEV-1 of 56- to 70-percent predicted, or; FEV-1/FVC of 56 to 70 percent, or; DLCO (SB) 56- to 65-percent predicted, is rated 30 percent disabling. FEV-1 of 40- to 55-percent predicted, or; FEV-1/FVC of 40 to 55 percent, or; DLCO (SB) of 40- to 55-percent predicted, or; maximum oxygen consumption of 15 to 20 ml/kg/min (with cardiorespiratory limit), is rated 60 percent disabling. FEV-1 less than 40 percent of predicted value, or; FEV-1/FVC less than 40 percent, or; DLCO (SB) less than 40-percent predicted, or; maximum exercise capacity less than 15 ml/kg/min oxygen consumption (with cardiac or respiratory limitation), or; cor pulmonale (right heart failure), or; right ventricular hypertrophy, or; pulmonary hypertension (shown by Echo or cardiac catheterization), or; episode(s) of acute respiratory failure, or; requires outpatient oxygen therapy, is rated 100 percent disabling. 38 C.F.R. § 4.97.

During the March 2008 VA examination, the Veteran complained of having chest pain, mostly on deep breathing and certain movements. The Veteran's pulmonary function testing resulted in FEV-1 of 103 percent predicted and FEV-1/FVC of 84 percent. Physical examination revealed that the lungs were clear to auscultation and percussion and there were no rales, no rhonchi, no wheezing. There was a considerable amount of tenderness in deep palpation of the anterior rib cage and the sternum without any gross deformity. 

The January 2018 VA examination report notes that there was a worsening of the Veteran's symptoms. The Veteran had difficulty with repetitive pushing, pulling, working overhead, lifting arms above shoulder level or lifting over 25 pounds. He experienced daily bilateral costosternal pain (4/10) made worse with deep breathing and physical movements of chest wall. The examiner noted that the Veteran was diagnosed with cervical spondylosis and degenerative arthritis and costochondritis conditions that can impose restrictive movement of the thorax. Physical examination of the anterior chest wall revealed mild tenderness of the costo-sternal junction at the third and fourth ribs bilaterally. There were no scars associated with a muscle injury, fascial defects and muscle injuries affecting muscle substance or function. There were also no cardinal signs or symptoms of muscle disability and muscle strength testing was normal. The Veteran's pulmonary function testing resulted in FEV-1 of 83 percent predicted, FEV-1/FVC of 82 percent, and DLCO of 100 percent. The VA examiner noted that the Veteran did not require outpatient oxygen therapy for his respiratory condition.

The Board concludes that a compensable rating is not warranted at any time during the appeal period for the service-connected costochondritis. The March 2008 and January 2018 VA examinations did not show pulmonary function testing results of FEV-1 of 71 to 80 percent predicted, or; FEV-1/FVC of 71 to 80 percent, or; DLCO (SB) of 66 to 80 percent predicted, as required for a compensable rating of 10 percent. 38 C.F.R. § 4.97, Diagnostic Code 6604. A compensable rating is likewise not warranted for the Veteran's muscle disability. The VA examinations reveal tenderness in the area of the chest and discomfort with deep breathing. Most recently, the Veteran complained of worsening symptoms of difficulty with repetitive pushing, pulling, working overhead, lifting arms above shoulder level or lifting over 25 pounds. However, the Board finds that the Veteran's muscle group XXI function impairment have not been more than slight at any time during the appellate period. The January 2018 VA examination specifically found that there were no scars associated with a muscle injury, fascial defects and muscle injuries affecting muscle substance or function; no cardinal signs or symptoms of muscle disability; and muscle strength testing was normal. Such findings are necessary to establish a higher rating under Diagnostic Code 5321. The examiner also noted that the Veteran's service-connected cervical spine disability can impose restrictive movement of the thorax. As shown above, the Veteran's cervical spine disability does cause limitation of motion. 

In sum, the preponderance of the evidence is against a disability rating higher than 20 percent for service-connected costochondritis. 

C. Left hip scar

In the June 2008 rating decision on appeal, the Veteran was granted service connection for a left hip scar and was assigned a 10 percent rating under Diagnostic Code 7804 and was assigned an effective date of February 28, 2008. 38 C.F.R. § 4.118.

The Board notes that revised provisions for evaluating scars were enacted effective October 23, 2008. The new regulation provides that the revised provisions are applicable only to claims received on or after October 23, 2008. Accordingly, the revisions do not apply in the present case. See 73 Fed. Reg. 54708 (Sept. 23. 2008). 

Pursuant to this specific revised regulation, 38 C.F.R. § 4.118, a Veteran who has been rated by VA under Diagnostic Codes 7800, 7801, 7802, 7803, 7804, or 7805 prior to October 23, 2008 may request review under the new version of Diagnostic Codes 7800, 7801, 7802, 7804, and 7805 irrespective of whether the disability has increased since the last review. In the case at hand, the Veteran has requested no such review.

Where there is a change in the rating criteria during the period on appeal, the claim should be considered in light of both the former and revised schedular rating criteria. Kuzma v. Prinicpi, 341 F.3d 1327, 1328 (Fed. Cir. 2003) ("[c]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result"). The Board has considered the Veteran's claim in light of the revised rating criteria and finds that the revised rating criteria is not more favorable to the Veteran in this case, and thus there would be no benefit to the Veteran in considering evaluation under the revised regulations.

Scars other than those on the face, head, or neck warrant a 10 percent rating for deep or that cause limitation of motion that cover areas greater than 6 square inches (39 square centimeters (cm)) but less than 12 square inches (77 square cm). A 20 percent rating is warranted if the area is greater than 12 square inches but less than 72 square inches. Higher ratings are warranted for even greater areas. A deep scar is one associated with underlying tissue damage. 38 C.F.R. § 4.118, Diagnostic Code 7801. 

A 10 percent rating is warranted for a superficial scar that do not cause limited motion if the area is 144 square inches (929 square cm) or larger. 38 C.F.R. § 4.118, Diagnostic Code 7802.

Diagnostic Code 7803 provides a 10 percent rating for superficial scars that are unstable. 38 C.F.R. § 4.118, Diagnostic Code 7803 (from August 30, 2002, to October 23, 2008). An unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Id. at Note (1). A superficial scar is one not associated with underlying soft tissue damage. Id. at Note (2).

Diagnostic Code 7804 provides a 10 percent rating for superficial scars that are painful on examination. 38 C.F.R. § 4.118, Diagnostic Code 7804 (from August 30, 2002, to October 23, 2008). As above, a superficial scar is one not associated with underlying soft tissue damage. Id. at Note (1).

Pursuant to Diagnostic Code 7805, scars are evaluated on the basis of limitation of function of the affected part. 38 C.F.R. § 4.118, Diagnostic Code 7805 (from August 30, 2002 to October 23, 2008).

Upon review of the evidence, the Board finds that the criteria for a higher rating for a left hip scar have not been met. The medical evidence demonstrates that the Veteran's left hip scar is not painful or unstable. Treatment records state that the Veteran underwent left hip surgery in February 2008, which resulted in a linear surgical scar. During the March 2008 VA examination, which was conducted less than one month following that surgery, the examiner stated that there was a 16 cm incisional scar at the lateral aspect of the left hip and buttocks and the area around the scar was tender and produced pain with palpation. There is no edema, no effusion, no muscle spasms, or guarding noted. However, the February 2017 and January 2018 VA examination reports described the Veteran's left hip scar as linear, not painful or unstable, and measuring 16.5 cm by 0.3 cm. Although the Veteran's left hip scar met the criteria for a 10 percent rating in March 2008 due to pain with palpation, during the 2017 and 2018 VA examinations, the Veteran's left hip scar was no longer painful. Therefore, the criteria for a higher rating under Diagnostic Code 7804 are not met. 

The Board has considered other potentially applicable diagnostic codes and finds no basis upon which to assign a rating higher than 10 percent. The scars do not cover an area of 12 square inches or greater, and hence do not warrant a higher rating under Diagnostic Codes 7801. Diagnostic codes 7802 and 7803 do not provide for a disability rating higher than 10 percent and the Veteran's scar does not cause limitation of function of the affected part. Therefore, a higher rating is not warranted under Diagnostic Code 7804. 

In sum, the preponderance of the evidence is against a disability rating higher than 10 percent for service-connected left hip scar. 

D. Left hip and right hip disabilities

The Veteran's service-connected left hip disability is currently rated 10 percent under 38 C.F.R. § 4.71a, Diagnostic Code 5003 prior to January 14, 2014, and 30 percent under 38 C.F.R. § 4.71a, Diagnostic Code 5054 since March 1, 2015. The Board notes that the Veteran was in receipt of 100 percent disability rating from February 28, 2008 to May 1, 2008 and from January 14, 2014 to February 28, 2015. Therefore, the Board will not address this time period as he was receiving the maximum disability rating available during that time.

The Veteran's service-connected right hip disability is currently rated 10 percent under 38 C.F.R. § 4.71a, Diagnostic Code 5003 prior to September 9, 2010, and 30 percent since November 1, 2011, under 38 C.F.R. § 4.71a, Diagnostic Code 5054. The Board notes that the Veteran was in receipt of 100 percent disability rating from September 9, 2010 to October 31, 2010. Therefore, the Board will not address this time period as he was receiving the maximum disability rating available during that time.

Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 C.F.R. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity or disuse atrophy. Under 38 C.F.R. § 4.59, painful motion is an important factor of disability from arthritis and actually painful joints are entitled to at least the minimum compensable rating for the joint.

Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. §§ 4.40 and 4.45 must be considered. DeLuca, 8 Vet. App. at 207-08. Within this context, a finding of functional loss due to pain must be supported by adequate pathology, and evidenced by the visible behavior of the claimant. Johnston, 10 Vet. App. at 85.

Under Diagnostic Code 5003, degenerative changes established by X-ray are rated on the basis of limitation of motion under the appropriate Diagnostic Code for the specific joint involved. When, however, the limitation of motion of the specific joint involved is noncompensable under the appropriate Diagnostic Code, a rating of 10 percent is for application for each major joint affected by limitation of motion. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. To that end, Diagnostic Code 5252 provides for 10, 20, 30, and 40 percent evaluations when hip flexion is limited to 45, 30, 20, and 10 degrees, respectively. 38 C.F.R. § 4.71a. Similarly, Diagnostic Code 5251 provides for a single 10 percent evaluation when hip extension is limited to 5 degrees. Id. Normal hip flexion is to 125 degrees; normal hip abduction is to 45 degrees. 38 C.F.R. § 4.71, Plate II. Limitation of abduction with motion lost beyond 10 degrees warrants a 20 percent evaluation under Diagnostic Code 5253.

The evidence of record does not support an evaluation greater than 10 percent for the Veteran's left hip disability prior to January 2014 under Diagnostic Code 5251, 5252 or 5253. During the March 2008 VA examination, the examiner was unable to get the Veteran's true range of motion readings due to the recent surgery on his left hip as his hip was not fully healed; however, the range of motion testing revealed 0 degrees extension, 50 degrees flexion, 15 degrees abduction, 10 degrees adduction, 10 degrees internal rotation, and 35 degrees external rotation. Pain was noted throughout motion testing. During VA treatment in August 2012, however, the Veteran's range of motion of the left hip was 0 to 90 degrees of flexion, internal rotation was to 25 degrees and external rotation was 10 to 15 degrees. Although the Veteran's range of motion was limited during the March 2008 VA examination, that limitation was due to the recent surgery. However, even with that additional limitation, the Veteran's left hip was not limited to 30 degrees of flexion or abduction limited to 10 degrees prior to January 2014 that would warrant a higher rating.

The evidence of record also does not reflect that the Veteran's left hip disability results in a level of functional loss meriting an initial evaluation greater than 10 percent. See DeLuca, 8 Vet. App. at 206; 38 C.F.R. §§ 4.40, 4.45, 4.59. Although the March 2008 VA examiner noted pain throughout range of motion testing, that pain was temporary as it was due to the recent surgery. Significantly, the August 2012 treatment report showed that the Veteran regained much of his range of motion. The Veteran did report having pain at that time, but it was described as intermittent and mild. He also reported that he was happy with his current activity level. There is no evidence indicating that the Veteran's range of motion of the left hip is affected by pain or functional loss. Therefore, an initial evaluation greater than 10 percent is not warranted based on the criteria in 38 C.F.R. §§ 4.40 and 4.45, and DeLuca. 

Regarding the right hip, the evidence of record does not support an evaluation greater than 10 percent prior to September 2010 under Diagnostic Code 5251 or 5252. During the March 2008 VA examination, range of motion testing of the right hip was normal with 0 degrees extension, 125 degrees flexion, 45 degrees abduction, 25 degrees adduction, 40 degrees internal rotation, and 60 degrees external rotation. The Veteran's right hip was not limited to 30 degrees of flexion or abduction limited to 10 degrees prior to January 2014 that would warrant a higher rating.

The evidence of record also does not reflect that the Veteran's right hip disability results in a level of functional loss meriting an evaluation greater than 10 percent. See DeLuca, 8 Vet. App. at 206; 38 C.F.R. §§ 4.40, 4.45, 4.59. During the March 2008 VA examination, there were no complaints of pain or any other symptoms related to the right hip. Therefore, the evidence of record does not show that the Veteran's range of motion of the right hip is affected by pain or functional loss. Therefore, a higher rating is not warranted based on the criteria in 38 C.F.R. §§ 4.40 and 4.45, and DeLuca. 

Other potentially applicable diagnostic codes pertaining to the hip have been considered. See Schafrath, 1 Vet. App. at 595. However, there is no evidence of hip ankylosis, malunion of the femur, or flail hip joint. Therefore, Diagnostic Codes 5250, 5254, and 5255 are not for application. 38 C.F.R. § 4.71a. 

The Veteran underwent prosthetic replacements of both hips, the left hip in January 2014 and the right hip in September 2010. Therefore, the RO rated the left and right hip disabilities under Diagnostic Code 5054 following those surgeries. 

Under Diagnostic Code 5054, replacement of the hip with a prosthesis warrants a 100 percent schedular evaluation for a one-year period following implantation of the prosthesis. A 90 percent evaluation is warranted if following the implantation there is painful motion or weakness such as to require the use of crutches. A 70 percent evaluation is warranted if there is markedly severe residual weakness, pain, or limitation of motion following implantation of the prosthesis. Chronic residuals consisting of moderately severe weakness, pain or limited motion may be rated 50 percent disabling. Where symptomatology commensurate with less than the criteria for a 50 percent rating is shown by the record, a 30 percent is assigned. 38 C.F.R. § 4.71a, Diagnostic Code 5054.

During VA treatment in August 2012, however, the Veteran's range of motion of the right hip was 0 to 90 degrees of flexion, internal rotation was to 15 degrees and external rotation was 25 degrees. The Veteran did not have any pain with motion.

During the February 2017 VA examination, the Veteran reported that the right arthroplasty has done well with minimal pain and good stability. The left arthroplasty has been more problematic with chronic pain and limited range of motion. There was dull and aching pain in the left hip that was 3-5/10 during and after ambulation. He denied locking up or subluxation of the arthroplasty. Range of motion testing of the left hip revealed 0 degrees extension, 90 degrees flexion, 25 degrees abduction, 15 degrees adduction, 30 degrees internal rotation, and 45 degrees external rotation. Pain was noted on examination with flexion, extension, abduction, adduction and external rotation that caused functional loss. There was localized moderate pain on palpation in the deep acetabular and pain on weight bearing. Range of motion testing of the right hip revealed 0 degrees extension, 110 degrees flexion, 30 degrees abduction, 20 degrees adduction, 30 degrees internal rotation, and 50 degrees external rotation. Pain was noted on examination with flexion, extension and abduction that caused functional loss. There was no additional loss of function or range of motion after repetitive motion in either hip. 

In December 2017, the VA examiner submitted an addendum stating that the Veteran had surgery residuals of ongoing hip pain and limited range of motion in both hips.

In the January 2018 VA examination report, the examiner indicated that the Veteran had moderately severe residuals of weakness, pain or limitation of motion in both the right and left hips. He had 4/5 strength in each hip on muscle strength testing and was noted to use a cane constantly. The Veteran reported that pain in both hips can flare up with excessive weight-bearing activities such as walking or climbing stairs and pain limits activities of daily living such as prolonged walking, prolonged standing, climbing stairs, and on standing after prolonged sitting. He had daily left hip pain (4-5/10) related to weight-bearing activities and had occasional right hip pain (2-3/10) related to excessive weight-bearing activities. He denies locking up or subluxation of the arthroplasty. Range of motion testing of the left hip revealed 0 degrees extension, 85 degrees flexion, 20 degrees abduction, 15 degrees adduction, 30 degrees internal rotation, and 40 degrees external rotation. Pain was noted on examination with flexion, extension, abduction, adduction, external rotation and internal rotation that caused functional loss. There was localized moderate pain on palpation in the deep acetabular and pain on weight bearing. Range of motion testing of the right hip revealed 0 degrees extension, 100 degrees flexion, 30 degrees abduction, 20 degrees adduction, 30 degrees internal rotation, and 50 degrees external rotation. Pain was noted on examination with flexion, extension and abduction that caused functional loss. There was no additional loss of function or range of motion after repetitive motion in either hip. 

Based on the evidence above, the Board finds that the severity of the overall disability meets the criteria for a 50 percent rating for the Veteran's left hip disability since March 1, 2015 under Diagnostic Code 5054. During the February 2017 VA examination, the Veteran reported that the left arthroplasty had been more problematic with chronic pain and limited range of motion. The January 2018 examiner indicated that the Veteran had moderately severe residuals of weakness, pain or limitation of motion in both the right and left hips and strength testing was 4/5 in both hips. Also, pain was noted on examination with flexion, extension, abduction, adduction, external rotation and internal rotation that caused functional loss. Therefore, the Board finds that the symptoms of the left hip warrants a 50 percent disability rating since March 2015. 

The Board has considered whether a rating higher than 50 percent is warranted for the left hip disability. In order to meet the criteria for the next higher rating under Diagnostic Code 5054, there must be markedly severe residual weakness, pain, or limitation of motion following implantation of the prosthesis. Although the Veteran was noted to walk with a cane, the Veteran's strength was 4 out of 5, which does not demonstrate markedly severe weakness. Also, the Veteran's pain was described as 4-5 out of 10 that was related to weight-bearing activities. Significantly, the examiner specifically indicated that the Veteran's left hip had moderately severe residuals of weakness, pain or limitation of motion. The Veteran also did not experience flare ups unless he was engaged in excessive weight-bearing activities and pain was limiting only with prolonged walking, prolonged standing, climbing stairs, and on standing after prolonged sitting. Therefore, a higher rating is not warranted for the left hip from March 1, 2015. 

Regarding the right hip, the Board finds that from November 1, 2011 to January 8, 2018, a rating higher than 30 percent is not warranted. The evidence does not show that the Veteran's right hip disability had moderately severe residuals. During VA treatment in August 2012, the Veteran did not have any pain with motion and his range of motion was not moderately severely limited. Although pain was noted on examination with flexion, extension and abduction that caused functional loss during the February 2017 VA examination, the Veteran reported that the right arthroplasty has done well with minimal pain and good stability. Therefore, a higher rating for the right hip disability is not warranted from November 1, 2011 to January 8, 2018. 

From January 9, 2018, the evidence shows that the severity of the overall right hip disability more nearly approximates a 50 percent rating since January 9, 2018 under Diagnostic Code 5054. The January 2018 examiner indicated that the Veteran had moderately severe residuals of weakness, pain or limitation of motion in both the right and left hips and strength testing was 4/5 in both hips. Also, pain was noted on examination with flexion, extension, and abduction that caused functional loss. Therefore, the Board finds that the symptoms of the left knee warrants a 50 percent disability rating since March 2015. 

The Board has considered whether a rating higher than 50 percent is warranted for the right hip disability from January 9, 2018. In order to meet the criteria for the next higher rating under Diagnostic Code 5054, there must be markedly severe residual weakness, pain, or limitation of motion following implantation of the prosthesis. Although the Veteran was noted to walk with a cane, the Veteran's strength was 4 out of 5, which does not demonstrate markedly severe weakness. Also, the Veteran's pain was described as occasional with a severity of only 2-3 out of 10 that was related to excessive weight-bearing activities. Significantly, the examiner specifically indicated that the Veteran's right hip had moderately severe residuals of weakness, pain or limitation of motion. Therefore, a higher rating is not warranted for the right hip from January 9, 2018. 

In sum, the preponderance of the evidence is against a disability rating higher than 10 percent for service-connected left hip disability prior to January 14, 2014 and a disability rating higher than 10 percent for service-connected right hip disability prior to September 9, 2010. The preponderance of the evidence is also against a disability rating higher than 30 percent for service-connected right hip disability prior to January 8, 2011. Finally, the Board concludes that a 50 percent rating is warranted for left hip disability from March 1, 2015 and a 50 percent rating is warranted for right hip disability from January 9, 2018. 

E. Residuals of a hallux surgery of the left foot

The Veteran's service-connected residuals of a hallux surgery of the left foot is currently rated 10 percent under 38 C.F.R. § 4.71a, Diagnostic Code 5280 for post-operative resection of the metatarsal head. 

Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 C.F.R. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity or disuse atrophy. Under 38 C.F.R. § 4.59, painful motion is an important factor of disability from arthritis and actually painful joints are entitled to at least the minimum compensable rating for the joint.

Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. §§ 4.40 and 4.45 must be considered. DeLuca, 8 Vet. App. at 207-08. Within this context, a finding of functional loss due to pain must be supported by adequate pathology, and evidenced by the visible behavior of the claimant. Johnston, 10 Vet. App. at 85.

Under Diagnostic Code 5003, degenerative changes established by X-ray are rated on the basis of limitation of motion under the appropriate Diagnostic Code for the specific joint involved. When, however, the limitation of motion of the specific joint involved is noncompensable under the appropriate Diagnostic Code, a rating of 10 percent is for application for each such major joint group or group of minor joints affected by limitation of motion to be combined, not added. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 

For the purpose of rating disability from arthritis, multiple involvement of the interphalangeal, metatarsal and tarsal joints of the lower extremities are considered groups of minor joints. 38 C.F.R. § 4.45 (f).

Under Diagnostic Code 5280, a maximum 10 percent rating is warranted for unilateral hallux valgus when the condition is severe and disabling to a degree equivalent to amputation of the great toe, or when there has been operation with resection of the metatarsal head. 38 C.F.R. § 4.71a, Diagnostic Code 5280.

As noted above, a 10 percent rating is the maximum rating possible under Diagnostic Code 5280 and a higher rating is therefore not possible under that Diagnostic Code. The Board considered whether a greater disability rating, higher than 10 percent, would be appropriate under alternative diagnostic code provisions. However, the claim file does not demonstrate a diagnosis of, or treatment for, other disorders of the feet, to include Diagnostic Code 5277 (bilateral weak foot), Diagnostic Code 5278 (acquired claw foot), Diagnostic Code 5279 (anterior metatarsalgia), Diagnostic Code 5281 (unilateral, severe hallux rigidis), Diagnostic Code 5282 (hammer toe), Diagnostic Code 5283 (malunion or nonunion of the tarsal or metatarsal bones). The medical evidence shows that the Veteran has bilateral pes planus and hammertoe deformities, however, the April 2008 VA examiner opined that these disabilities were of hereditary origin and neither were caused by military service nor advanced by military service beyond normal life progression. Moreover, the only condition of the left foot found to be related to the Veteran's service-connected residuals of a hallux surgery of the left foot is osteoarthritis. See VA examination dated February 2017.

The Board has also considered whether Diagnostic Code 5284, which rates other foot injuries, may be applicable. However, as a matter of law, Diagnostic Code 5284 does not apply to the eight foot conditions specifically listed in § 4.71a, and thus, rating the listed conditions under that Diagnostic Code would constitute an impermissible rating by analogy here. Copeland v. McDonald, 27 Vet. App. 333, 338 (2015). Moreover, the plain meaning of the word "injury" limits the application of Diagnostic Code 5284 to disabilities resulting from actual injuries to the foot, as opposed to disabilities caused by, for example, degenerative conditions. Yancy v. McDonald, 27 Vet. App. 484, 495 (Fed. Cir. 2016). 

Additionally, while acknowledging X-ray evidence of osteoarthritis of the left first metatarsophalangeal joint that has been shown throughout the appellate period, such findings do not allow for a higher compensable rating under Diagnostic Code 5003, as only one group of minor joints in the left foot is involved. See 38 C.F.R. § 4.71a, Diagnostic Code 5003; Spicer v. Shinseki, 752 F.3d 1367, 1371 (Fed. Cir. 2014). Nor is a compensable rating warranted under 38 C.F.R. § 4.59 for documented painful motion, as there are no diagnostic codes specific to limitation of motion of the toes and, therefore, there is no compensable rating available for limitation of motion of the metatarsophalangeal joint.

In sum, the preponderance of the evidence is against a disability rating higher than 10 percent for service-connected residuals of a hallux surgery of the left foot. 

F. Hearing loss disability

The Veteran's right ear hearing loss disability is currently rated as noncompensable. Evaluations of defective hearing range from noncompensable to 100 percent for service-connected bilateral hearing loss. These evaluations are based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination testing together with the average hearing threshold level as measured by pure tone audiometry tests in the frequencies 1000, 2000, 3000 and 4000 cycles per second. To evaluate the degree of disability from defective hearing, the revised rating schedule establishes eleven auditory acuity levels from level I for essentially normal acuity through XI for profound deafness. 38 C.F.R. § 4.85, Diagnostic Code 6100.

In cases of exceptional hearing loss, i.e. when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear will be evaluated separately. See 38 C.F.R. § 4.86(a). The provisions of 38 C.F.R. § 4.86(b) provide that when the pure tone threshold is 30 decibels or less at 1000 hertz, and 70 decibels or more at 2000 hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results is the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will then be evaluated separately. 

The Veteran was afforded a VA audiological examination in November 2012. The air conduction audiometric findings were as follows:



HERTZ
CNC

1000
2000
3000
4000
Avg
%
RIGHT
20
5
10
20
14
100

Applying the puretone threshold average and speech discrimination results of the audiological examination to Table VI, yielded a value of level I for the right ear. Applying those values to Table VII, the designations yield a noncompensable evaluation. 38 C.F.R. § 4.85, Diagnostic Code 6100.

The Veteran was afforded another VA audiological examination in January 2018. The audiometric findings were as follows:



HERTZ
CNC

1000
2000
3000
4000
Avg
%
RIGHT
25
10
15
15
16.25
100

Applying the puretone threshold average and speech discrimination results of the audiological examination to Table VI, yielded a value of level I for the right ear. Applying those values to Table VII, the designations yield a noncompensable evaluation. 38 C.F.R. § 4.85, Diagnostic Code 6100.

The Board notes that the January 2018 VA examiner noted that the Veteran's right ear hearing loss had shown improvement after his ear surgery.

During the January 2018 VA examination, the Veteran described the impact of his hearing loss on his work and in his daily life stating that he stated that he could not hear anything in his ears. Although the Veteran asserts that his hearing loss is more severe than currently rated, his statements alone cannot establish that a disability rating higher than noncompensable is warranted as ratings for hearing loss are based on the mechanical application of results of regulation-mandated audiometry. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Accordingly, the preponderance of the evidence is against the claim seeking a higher rating for right ear hearing loss disability. 

The preponderance of the evidence is against the claim; there is no doubt to be resolved and an initial compensable rating is not warranted. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.


ORDER

An effective date earlier than February 28, 2008 for the award of service connection for a left hip scar is denied.

The claim of entitlement to an effective date earlier than June 16, 2005, for a 10 percent rating for degenerative joint disease of the left hip is dismissed.

The claim of entitlement to an effective date earlier than June 16, 2005, for a 10 percent rating for degenerative joint disease of the right hip is dismissed.

The claim of entitlement to an effective date earlier than June 16, 2005, for a 10 percent rating for degenerative joint disease of the lumbar spine is dismissed.

Entitlement to a rating higher than 20 percent for degenerative arthritis of the cervical spine is denied.

Entitlement to an initial compensable rating for costochondritis is denied.

Entitlement to an initial rating higher than 10 percent for a left hip scar associated with left hip degenerative joint disease is denied.

Entitlement to a rating higher than 10 percent disabling prior to January 14, 2014 for left total hip arthroplasty (previously rating as degenerative joint disease of the left hip) is denied.

A 50 percent disability rating from March 1, 2015 for left total hip arthroplasty, is granted, subject to the laws and regulations governing the payment of monetary awards.

Entitlement to a rating higher than 10 percent prior to September 9, 2010 for right total hip arthroplasty (previously rating as degenerative joint disease of the right hip), is denied.

Entitlement to a rating higher than 30 percent from September 9, 2010 to January 8, 2018 for right total hip arthroplasty (previously rating as degenerative joint disease of the right hip) is denied.

A 50 percent disability rating from January 9, 2018 for right total hip arthroplasty, is granted, subject to the laws and regulations governing the payment of monetary awards.

Entitlement to a rating higher than 10 percent for residuals of a hallux surgery of the left foot is denied.

Entitlement to a compensable disability rating for the service-connected right ear hearing loss disability is denied.


REMAND

The Veteran is claiming service connection for a right hand disability and a right elbow disability. During the January 2018 VA examination, the examiner stated that there was no additional diagnosis of the claimed right hand condition, to include any disorder of the individual digits as this was evaluated under the service connected diagnosis. The Board finds this conclusion confusing as the Veteran is service connected for only the right ring finger. The examiner also did not provide an explanation for the Veteran's limitation of function and symptoms of the right hand. The examiner's opinion regarding the right elbow disability is also confusing and did not clearly provide the requested opinion as to whether the Veteran's service-connected right finger disability aggravated his claimed right elbow.

In order to properly adjudicate this appeal, a fully articulated and soundly reasoned medical opinion is needed. As such, another VA examination must be afforded to the Veteran. Barr v. Nicholson, 21 Vet. App. 303 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 125 (2007).

Regarding the claim for a higher rating for degenerative joint disease of the lumbar spine, the Veteran has complained about radiating pain from the back to the lower extremities during VA treatment and during the January 2018 VA examination. The January 2018 VA examiner stated that there were no objective symptoms to support a diagnosis at that time; however, the examiner failed to provide an explanation for the Veteran's symptom. As the examiner's finding is inconsistent with the Veteran's reports of radiating pain and there is medical evidence of radiculopathy, another examination is necessary in this case. See Barr, 21 Vet. App. 303.

The TDIU claim and the claim for a higher rating for a right ring finger disability are inextricably intertwined with the issues of service connection for a right hand disability and a right elbow disability. Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). As a remand is necessary in this case, the Veteran should be afforded another opportunity to submit a VA Form 21-8940.

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with a VA Form 21-8940 in connection with the claim for entitlement to TDIU, and request that he supply the requisite information.

2. The RO must provide the Veteran with an appropriate examination by an examiner who has not previously examined the Veteran to determine the etiology of the Veteran's right hand disability and right elbow disability. The claim file must be made available to the examiner for review. 

Based on the clinical examination, a review of the evidence of record, and with consideration of the Veteran's statements, the examiner must provide an opinion as to whether any diagnosed right hand disability and right elbow disability had their onset during, or is related to, active service. The examiner must also provide an explanation for the Veteran's symptoms associated with the right hand, including limitation of function and associated symptoms.

The examiner must also provide an opinion as to whether any diagnosed right hand disability and right elbow disability are caused or aggravated by the service-connected right ring finger disability. 

The term "aggravated" in the above context refers to a worsening of the underlying condition, as contrasted to temporary or intermittent flare-ups of symptomatology which resolve with return to the baseline level of disability. 

A complete rationale must be provided for all opinions expressed. If the examiner cannot provide a requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why that opinion would require speculation. The examiner must indicate whether there was any further need for information or testing necessary to make a determination. Additionally, the examiner must indicate whether any opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner. 

3. Following the above development, the RO must provide the Veteran with an appropriate examination to determine the current severity of his service-connected degenerative joint disease of the lumbar spine, to include all associated residuals. The Veteran's file must be made available to the examiner for review. Any indicated diagnostic tests and studies must be accomplished. All pertinent symptomatology and findings must be reported in detail.

The examiner must also identify all currently present manifestations of the Veteran's lumbar spine disability. Both neurological and orthopedic manifestations must be recorded. The examiner is to specifically address the Veteran's reports of radiating pain and the presence and severity of any neurological abnormalities of the right and left lower extremities associated with the Veteran's service-connected lumbar spine disability must be determined. The examiner is to identify any symptoms (including, but not limited to, any paresthesia or other neurological pathology in the Veteran's right and left lower extremities, and/or any bowel or bladder impairment) due to the lumbar spine disability and describe the nerve(s) affected by nerve root compression. 

The examination report must confirm that all such testing has been made and reflect the results of the testing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, the examiner must clearly explain why that is so. 

Then, with consideration of the clinical findings, and after reviewing the Veteran's complaints and medical history, the examiner must render an opinion as to the extent to which the Veteran experiences functional impairments, such as weakness, excess fatigability, lack of coordination, or pain due to repeated use or flare-ups, etc. Objective evidence of loss of functional use can include the presence or absence of muscle atrophy and/or the presence or absence of changes in the skin indicative of disuse due to the service-connected lumbar spine disability. 

Finally, the examiner must also opine as to whether, without regard to the Veteran's age or nonservice-connected disabilities, it is at least as likely as not that his service-connected disabilities either individually or in the aggregate, renders him unable to secure or follow a substantially gainful occupation. 

The examiner must provide a complete rationale for all opinions expressed. If the examiner cannot provide the requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation. The examiner must indicate whether there was any further need for information or testing necessary to make a determination. The examiner must indicate whether an opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner. 

If upon completion of the above action the appeal remains denied, the case should be returned to the Board after compliance with appellate procedures. The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This appeal must be afforded expeditious treatment. The law requires that all issues that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
E.I. VELEZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs