# United States Court of Appeals for the Federal Circuit

---

**DONALD SPICER (for Stephen Spicer),**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7142

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 12-2009, Judge Alan G. Lance, Sr.

---

Decided: May 30, 2014

---

GARTH BAER, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for claimant-appellant. With him on the brief were RONALD L. SMITH and BENJAMIN T. SIROLLY.

NICHOLAS JABBOUR, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, MARTIN F. HOCKEY, JR., Assistant Director, and JAMES SWEET, Trial Attorney. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel,

and CHRISTINA GREGG, Staff Attorney, United States Department of Veterans Affairs, of Washington, DC. Of counsel were CHRISTA A. SHRIBER and Y. KEN LEE.

---

Before LOURIE, CLEVENGER, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Donald Spicer appeals from the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the decision of the Board of Veterans' Appeals ("Board") finding that Stephen R. Spicer ("Spicer") was not entitled to an increased rating under 38 C.F.R § 4.71a, Diagnostic Code ("DC") 5003.[*] *See Spicer v. Shinseki*, No. 12-2009, 2013 WL 2902798 (Vet. App. June 14, 2013). Because the Veterans Court did not err in interpreting the governing regulation, we affirm.

## BACKGROUND

Spicer served on active duty in the Navy from February 1984 to February 1987. In 1986, Spicer fractured his left little finger aboard a ship when a door closed on his hand. The fracture required surgery, which ultimately resulted in the finger joint fusing. In 2007, a Department of Veterans Affairs ("VA") examiner diagnosed Spicer as having degenerative arthritis of the distal interphalangeal ("DIP") joint in his left little finger. A VA regional office denied Spicer a compensable rating for his left finger disability, and Spicer appealed to the Board.

---

[*] Original Appellant Stephen R. Spicer passed away from an apparent heart attack prior to oral argument. Appellant's counsel moved to substitute Spicer's father, Donald Spicer, as the party of interest under Fed. R. App. P. 43. We granted the motion.

The Board denied Spicer's increased rating claim. It found that although Spicer's left finger disability was manifested by pain and limitation of motion, Spicer failed to meet the criteria for a compensable evaluation for a left finger disability under either DC 5227 or 5230.

Spicer then appealed to the Veterans Court, arguing that the Board failed to consider DC 5003. *Spicer*, 2013 WL 2902798, at \*2. Spicer argued that DC 5003 assigns a 10% rating for either a single affected major joint or a group of affected minor joints and that 38 C.F.R. § 4.45(f) does not mandate that multiple minor joints be involved. *Id.*

The Veterans Court affirmed the Board's decision, holding that the Board did not err by failing to consider DC 5003. *Id.* The Veterans Court found that "the DIP joint is not a major joint or minor joint group for the purpose of rating disabilities from arthritis." *Id.* at 3 (citing 38 C.F.R. § 4.45(f)). The Veterans Court noted that, although the Board did not separately consider the applicability of DC 5003 to Spicer, any possible error was harmless because DC 5003 was not applicable to Spicer. *Id.* at 4. Spicer did not challenge the Board's findings under DC 5227 or 5230. *Id.* at 2.

This appeal followed.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited by statute. 38 U.S.C. § 7292. We "have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof [by the Veterans Court] . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." *Id.* § 7292(c). We may not, however, absent a constitutional challenge, "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to

the facts of a particular case." *Id.* § 7292(d)(2). We therefore generally lack jurisdiction to review challenges to the Board's factual determinations or to any application of law to fact. *See, e.g.*, *Johnson v. Derwinski*, 949 F.2d 394, 395 (Fed. Cir. 1991). But we do have jurisdiction here to determine the proper interpretation of a regulation such as DC 5003. *See Amberman v. Shinseki*, 570 F.3d 1377, 1381 (Fed. Cir. 2009) (exercising jurisdiction over review of the Veterans Court's interpretation of regulation with rating schedule).

Section 4.71a of the VA regulations sets forth a schedule of disability ratings for impairments of the musculoskeletal system. *See* 38 C.F.R. § 4.71a. Within that schedule, DC 5003 prescribes ratings for degenerative arthritis. *See id.*, DC 5003. The relevant portion of the code reads as follows:

> Degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved (DC 5200 etc.). When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, *a rating of 10 [percent] is for application for each such major joint or group of minor joints affected by limitation of motion*, to be combined, not added under diagnostic code 5003.

*Id.* (emphasis added).

Section 4.45(f) of the VA regulations, a section preceding the schedule of disability ratings for impairments of the musculoskeletal system, lays out the "factors of disability" for joints. *See* 38 C.F.R. § 4.45(f). The relevant portion of the code reads as follows:

> As regards the joints the factors of disability reside in reductions of their normal excursion of

movements in different planes. Inquiry will be directed to these considerations:

. . .

(f) Pain on movement, swelling, deformity or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing and weight-bearing are related considerations. *For the purpose of rating disability from arthritis*, the shoulder, elbow, wrist, hip, knee, and ankle are considered major joints; *multiple involvements of the interphalangeal*, metacarpal and carpal joints of the upper extremities, the interphalangeal, metatarsal and tarsal joints of the lower extremities, the cervical vertebrae, the dorsal vertebrae, and the lumbar vertebrae, *are considered groups of minor joints, ratable on a parity with major joints*.

*Id.* (emphases added).

Spicer argues that degenerative arthritis in a single DIP joint results in a "group of minor joints affected by limitation of motion" and can entitle a veteran to 10% rating under DC 5003. Spicer asserts that a minor joint group is affected when one of its minor members is affected, just as the minor joint group is affected when two or more members are affected. Spicer argues that DC 5003 only establishes a 10% ceiling no matter how many minor joints in a minor joint group are affected, as long as the limitation of motion is otherwise noncompensable. Spicer contends that § 4.45(f) does not address how to rate a disability when only one minor joint is affected. Further, Spicer argues that even if we find that the regulation is ambiguous, the law requires us to resolve interpretative doubt in favor of the veteran.

The Secretary responds that DC 5003 provides that arthritis must result in a limitation of motion in two or

more minor joints in order to justify a 10% rating. The Secretary contends that § 4.45(f) expressly defines the term "group of minor joints" as including only "multiple involvements" of interphalangeal joints. The Secretary also responds that there is no ambiguity in the regulation.

We agree with the Secretary that the Veterans Court did not err in interpreting DC 5003 to require limitation of motion in more than one minor joint. The plain language of DC 5003, read in view of § 4.45(f), makes clear that "a minor joint group is affected" only when two or more joints suffer from limitation of motion. *See Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997) ("To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning.").

Under DC 5003, when "the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 [percent] is for application for each such major joint or group of minor joints affected by limitation of motion . . . ." § 4.71a, DC 5003. The regulation places a group of minor joints affected by limitation of motion on a par with a major joint for purposes of qualifying for a 10% rating. The question then becomes how to interpret "a group of minor joints affected by limitation of motion."

Section 4.45(f) states that "[f]or the purpose of rating disability from arthritis, . . . *multiple involvements* of the interphalangeal . . . joints . . . are considered groups of minor joints, ratable on a parity with major joints." § 4.45(f) (emphasis added). Thus, based on the plain language of § 4.45(f), a group of minor joints requires limitation of motion in more than one interphalangeal joint. Interpreting the language from DC 5003, "affecting the limitation of motion," to allow for a 10% rating for limitation of motion in a single interphalangeal joint would be inconsistent with the clear language of § 4.45(f)

requiring more than one joint, or "multiple involvements." As a result, when DC 5003 is read in view of § 4.45(f), it is clear that DC 5003 requires limitation of motion in two or more interphalangeal joints to warrant a 10% rating.

That interpretation is not contrary to the Supreme Court's mandate that "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 117–19 (1994). There is no ambiguity in DC 5003, and referencing § 4.45(f) to interpret DC 5003 does not create interpretive doubt. *See Nielson v. Shinseki*, 607 F.3d 802, 808 (Fed. Cir. 2010) ("The mere fact that the particular words of the statute standing alone might be ambiguous does not compel us to resort to the *Brown* canon."); *cf. Sursely v. Peake*, 551 F.3d 1351, 1355–57 & n.5 (Fed. Cir. 2009) (applying *Brown* after other interpretive guidelines did not resolve ambiguity). We thus conclude that under the plain language of DC 5003 and § 4.45(f) a minor joint group is affected only when two or more joints suffer from limitation of motion. Accordingly, as a matter of interpretation, the Veterans Court did not err in holding that limitation of motion in a "group of minor joints" requires more than one minor joint suffering from limitation of motion to qualify for the 10% rating contemplated by DC 5003.

To the extent that Spicer's appeal raises an issue of application of DC 5003 and § 4.45(f) to the facts, such issue is beyond our jurisdiction and we do not address it. *Johnson*, 949 F.2d at 395.

## CONCLUSION

We have considered Spicer's remaining arguments and conclude that they are without merit. Because the Veterans Court did not err in interpreting the governing regulation, we affirm.

**AFFIRMED**