# United States Court of Appeals for the Federal Circuit

---

**JULIEN P. CHAMPAGNE,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-1047

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-1156, Judge Scott Laurer.

---

Decided: December 6, 2024

---

FALEN M. LAPONZINA, ADVOCATE Nonprofit Organization, Washington, DC, argued for claimant-appellant. Also represented by KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS.

AMANDA TANTUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM; CHRISTINA LYNN GREGG, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before CHEN, HUGHES, and STARK, *Circuit Judges*.

STARK, *Circuit Judge.*

Julien P. Champagne appeals from the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans' Appeals' ("Board") denial of an effective date earlier than July 14, 2003, for service connection for Mr. Champagne's cerebellar degenerative disorder ("CDD"). *Champagne v. McDonough*, 2022 WL 2663589 (Vet. App. Jul. 11, 2022). We affirm.

I

Mr. Champagne served honorably on active duty in the United States Marine Corps from December 1953 to December 1956. In September 1987, he filed a "Veteran's Application for Compensation or Pension," using VA Form 21-526, with the United States Department of Veterans Affairs ("VA") ("1987 Application"), seeking benefits relating to his CDD. App'x 21-24.[1] A VA regional office ("RO") construed the 1987 Application as an "application for pension benefits," SApp'x 2, and awarded a "disability pension" in December 1987, App'x 29.

In August 1999, Mr. Champagne filed a "Statement in Support of Claim," requesting that the VA consider a claim for service connection disability compensation ("service connection compensation" or just simply "compensation") for a malaria condition, as well as any residual illnesses he "obtained while in military service." App'x 30. In a July

---

[1]    "App'x" refers to the appendix attached to Mr. Champagne's opening brief.    "SApp'x" refers to the supplemental appendix attached to the government's response brief.

2002 rating decision, the RO granted Mr. Champagne service connection compensation for malaria at 0%, effective November 15, 2001, but did not grant compensation for any residual illnesses, including CDD. In July 2003, Mr. Champagne filed a notice of disagreement, contending that he had contracted malaria during service and that his CDD was caused by malaria. In April 2004, the RO confirmed its July 2002 rating decision.

In February 2005, upon finding that Mr. Champagne had failed to timely appeal its earlier decisions, the RO construed one of Mr. Champagne's filings as a new claim seeking a higher service connection compensation rating for malaria and also seeking a finding of compensation for CDD as a residual of or as secondary to malaria. After multiple proceedings between 2005 and 2013, Mr. Champagne was granted compensation for CDD at a 100% rating, effective February 3, 2005. He challenged this effective date and, in January 2018, the RO granted him an earlier effective date of July 14, 2003.

The January 2018 rating decision explained that Mr. Champagne's 1987 Application was "a claim for pension benefits" but added that "a claim for pension is also considered a claim for compensation benefits," even though "there was no evidence of record to suggest that [Mr. Champagne's] disability was incurred in or caused by service." App'x 41. Mr. Champagne appealed the July 14, 2003 effective date to the Board, arguing he "should be compensated from 1987 instead." App'x 44.

In October 2020, the Board issued a decision denying an effective date earlier than July 14, 2003. With respect to Mr. Champagne's 1987 Application, the Board found that his application contained "no suggestion of an intention . . . to make a claim for service connected disability benefits [i.e., compensation] in addition to the non-service connected pension benefits." App'x 61. "Under these circumstances," the Board concluded, "there was no

requirement for [the] VA to consider the claim for pension as also one for compensation." *Id.*

Mr. Champagne appealed the Board's decision to the Veterans Court. On July 11, 2022, the Veterans Court affirmed the Board's October 2020 decision. Citing its precedent, namely *Stewart v. Brown*, 10 Vet. App. 15 (1997), the Veterans Court determined that under 38 C.F.R. § 3.151(a), the "VA *may* consider a claim for pension to include a claim for compensation, but it is not *required* to do so." App'x 5 (emphasis in original). According to the Veterans Court, then, the Board permissibly construed Mr. Champagne's 1987 Application claim as *not* containing a claim for service connection compensation. The Veterans Court further concluded that it "need not determine" whether the RO had, in its January 2018 rating decision, "made . . . a factual finding" that the 1987 Application included a compensation claim because, even if the RO had done so, "the Board would not be bound by that finding." *Id.* at 7 & n.59.

Mr. Champagne timely appealed the Veterans Court's decision to us.

## II

Our jurisdiction to review judgments of the Veterans Court is limited. We may review the validity of a Veterans Court decision "on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by" the Veterans Court. 38 U.S.C. § 7292(a). However, "[e]xcept to the extent that an appeal . . . presents a constitutional issue," we may not review "a challenge to a factual determination" or "to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2).

"We review questions of statutory and regulatory interpretation de novo." *Cavaciuti v. McDonough*, 75 F.4th 1363, 1366 (Fed. Cir. 2023). We "hold unlawful and set

aside any regulation or any interpretation thereof" that we find to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law."  38 U.S.C. § 7292(d)(1).

## III

Mr. Champagne raises two issues on appeal.  First, he contends that the Veterans Court misinterpreted 38 C.F.R. § 3.151(a) as not requiring the VA to treat his 1987 Application as both a claim for pension benefits ("pension") and also a claim for service connection disability compensation.  Second, as an alternative argument, he contends that the Veterans Court engaged in impermissible factfinding.  We address each issue in turn.

## A

Before reaching the merits, we first consider the government's contention that we lack jurisdiction to review Mr. Champagne's appeal.  The government argues that the Veterans Court did not interpret 38 C.F.R. § 3.151(a) but, instead, "simply applied section 3.151(a) to the facts, including the language of Mr. Champagne's September 1987 application." Appellee's Br. 15.  We disagree.

In rejecting Mr. Champagne's contention that his 1987 Application must be treated as both a claim for pension and a claim for compensation, the Veterans Court, relying on its *Stewart* precedent, articulated its view that the language of § 3.151(a) "is permissive – not mandatory," meaning that "VA *may* consider a claim for pension to include a claim for compensation, but it is not *required* to do so." App'x 5 (emphasis in original).  These statements show that the Veterans Court was elaborating on the meaning of, and thus interpreting, the regulation, not merely applying it to a particular factual scenario.  *See*

*Forshey v. Principi*, 284 F.3d 1335, 1349 (Fed. Cir. 2002) (en banc) ("[A]n interpretation of a statute or regulation occurs when its meaning is elaborated by the court."). Thus, we do not dismiss this appeal for lack of jurisdiction.

## B

Mr. Champagne contends that a proper reading of 38 C.F.R. § 3.151(a) requires the VA to construe an application, such as his 1987 Application, as both a claim for a pension and a claim for compensation. Section 3.151(a) provides:

> (a) *General.* A specific claim in the form[2] prescribed by the Secretary must be filed in order for benefits to be paid to any individual under the laws administered by VA. (38 U.S.C. 5101(a)). *A claim by a veteran for compensation may be considered to be a claim for pension; and a claim by a veteran for pension may be considered to be a claim for compensation. The greater benefit will be awarded, unless the claimant specifically elects the lesser benefit.*

---

[2] The title of the form Mr. Champagne used, "Veteran's Application for Compensation or Pension," is arguably ambiguous and, unfortunately, might be misunderstood as constituting an application for *both* pension *and* compensation benefits, regardless of how the veteran completes the form. This appeal, however, does not call upon us to reach any conclusions about any particular form. Only the regulation is at issue, as Mr. Champagne's counsel made clear at oral argument. *See* Oral Arg. 10:15-12:28, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1047_04042024.mp3.

38 C.F.R. § 3.151(a) (emphasis added).

In Mr. Champagne's view, the two emphasized sentences mean that "both pension and service connection [compensation] should have been adjudicated to determine the greater benefit, and only after specific election by Mr. Champagne, should the lesser benefit have been awarded." Appellant's Br. 9. The government responds that the Veterans Court's interpretation of the regulation is correct: the VA may exercise its discretion to consider a claim for a pension to also be a claim for compensation, and vice versa, but the VA is not required to do so. We agree with the government.

"When construing a regulation, we begin with the regulatory language itself to determine its plain meaning." *Frazier v. McDonough*, 66 F.4th 1353, 1357 (Fed. Cir. 2023) (internal quotation marks and citation omitted). We are also "required to carefully consider the text, structure, history, and purpose of a regulation when determining its meaning." *Id.* (internal quotation marks and citation omitted).

Starting with the language, § 3.151(a) states that "[a] claim by a veteran for compensation *may* be considered to be a claim for pension" (emphasis added). "May" is a permissive word, not a command. *See, e.g.*, *Ravin v. Wilkie*, 956 F.3d 1346, 1350 (Fed. Cir. 2020) ("The fact that [a statute] uses the term 'may' means the statute should not be read as mandatory."); *Andersen Consulting v. United States*, 959 F.2d 929, 932 (Fed. Cir. 1992) ("The use of the permissive 'may' instead of the mandatory 'shall,' authorizes the board to employ its discretion . . . ."). Thus, we "use common sense and presume that the word conveys some degree of discretion." *McBryde v. United States*, 299 F.3d 1357, 1362 (Fed. Cir. 2002). The plain language of § 3.151(a), then, establishes that the VA is allowed, but not

required, to consider a pension claim as a compensation claim, and vice versa.[3]

Mr. Champagne attempts to show that "inferences that we may rationally draw from the structure and purpose" of the regulation somehow rebut the plain meaning of "may." *See McBryde*, 299 F.3d at 1362. His effort fails. He relies primarily on the third sentence of the regulation: "[t]he greater benefit will be awarded, unless the claimant specifically elects the lesser benefit." 38 C.F.R. § 3.151(a). Mr. Champagne argues that, in order to determine which benefit is greater, the VA must consider both pension and compensation claims; otherwise, it has no way of knowing which amount is greater. Hence, he continues, the VA must consider an application as seeking both types of benefits.

We are not persuaded. Instead, we read the third sentence of the regulation as providing the rule of decision for those instances *when* the VA considers both types of benefits. The sentence does not tell the VA anything about when it *must* do so. Mr. Champagne's contrary view would

---

[3]    The Veterans Court has held that under certain circumstances – specifically, where "the record was replete with evidence showing that the veteran qualified for disability compensation," giving the VA "notice that the [veteran] might be eligible for both" types of benefits – the VA's statutory duty to assist, as set out in 38 U.S.C. § 5103A, may *require* the VA to consider a pension claim as a claim for both pension and compensation benefits. *See Stewart*, 10 Vet. App. at 18-19. Mr. Champagne does not argue that such circumstances are present here (and we might lack jurisdiction over such an argument if it were made). Nonetheless, nothing we have said here should be read as weakening the VA's duty to assist or as precluding the possibility that the Veterans Court could find certain exercises of VA discretion under § 3.151(a) could constitute an abuse of that discretion.

effectively have us rewrite the plain language of § 3.151(a) from "may be considered" to "will be considered." This we may not do. *See Langdon v. McDonough*, 1 F.4th 1008, 1013 (Fed. Cir. 2021) (refusing to "rewrite the plain regulatory language"); *see also Kisor v. Wilkie,* 588 U.S. 558, 575 (2019) ("[A] court cannot wave the ambiguity flag just because it [finds a] regulation impenetrable on first read.").

Mr. Champagne additionally points to the "specific[] elect[ion]" language of the third sentence of § 3.151(a), which he contends "removes any discretion[] from the VA" as to how it should "construe the application." Appellant's Br. 9. This argument, too, lacks merit. We do not see how the "specific[] elect[ion]" term limits the VA's discretion – as plainly set out in the second sentence of the regulation – to consider the veteran's claim as one solely for pension or compensation benefits. This language, instead, simply functions to provide the veteran with the ability to choose which benefit he wishes to elect *when* the VA evaluates his claim for both pension and compensation. Nothing about the third sentence converts the discretionary "may" of the second sentence into a mandatory obligation of the VA.

The overall regulatory scheme further supports our conclusion. For example, an adjacent regulation, which addresses claims for death benefits, reads:

> A claim by a surviving spouse or child for compensation or dependency and indemnity compensation *will also be considered* to be a claim for death pension and accrued benefits, and a claim by a surviving spouse or child for death pension *will be considered* to be a claim for death compensation or dependency and indemnity compensation and accrued benefits.

38 C.F.R. § 3.152(b)(1) (emphasis added). The distinction between the use of "may" in § 3.151(a), with pension and

compensation claims, and "will" in § 3.152(b), with death claims, shows that if the VA intends to impose a requirement on itself, it does so with compulsory language. *See generally Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks and citation omitted).

Finally, Mr. Champagne observes that "when interpreting veterans' benefits statutes, any doubt is to be resolved in the veteran's favor." Appellant's Br. 14 (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). However, for the reasons discussed above, we find no "interpretive doubt" here. Although § 3.151(a) could have been written more clearly, its plain language and its context in the regulatory scheme as a whole unambiguously establish that the VA has discretion to determine that a veteran is solely seeking pension or compensation benefits. Thus, we have no basis to apply the pro-veteran canon of interpretation. *See, e.g.*, *Spicer v. Shinseki*, 752 F.3d 1367, 1371 (Fed. Cir. 2014) (stating that lack of ambiguity means there is no "interpretive doubt" that could give rise to application of pro-veteran canon of interpretation).

For the foregoing reasons, the Veterans Court's interpretation of § 3.151(a) is correct. The VA may, but is not required to, consider a claim for pension to also include a claim for compensation, and vice versa.

C

In the alternative, Mr. Champagne contends that the Veterans Court engaged in impermissible fact finding. It is not entirely clear what fact Mr. Champagne believes the Veterans Court found; he seems to principally take issue with a portion of the Veterans Court's decision he describes as a finding that the RO's January 2018 rating decision

"made no factual findings" as to whether his 1987 Application for pension was also considered a claim for compensation. Appellant's Br. 17-18.

We do not see the Veterans Court as having engaged in fact finding, either in the portion of its opinion emphasized by Mr. Champagne or anywhere else. To the contrary, the Veterans Court expressly stated that it "need not determine whether the [RO] made . . . a finding" about which type of benefits Mr. Champagne sought in 1987, App'x 7 n.59, because even if the RO had made such a finding, "the Board would not be bound by that finding," App'x 7. Thus, the Veterans Court merely decided that any findings in the RO's January 2018 rating decision would not have been dispositive because the Board determined for itself that Mr. Champagne's 1987 Application did not include a claim for compensation.[4] We have no basis to reverse.

IV

We have considered Mr. Champagne's remaining arguments and find them unpersuasive. Accordingly, we affirm the Veterans Court's decision.

**AFFIRMED**

COSTS

No costs.

---

[4] To the extent Mr. Champagne challenges the Board's finding that his 1987 Application did not include a claim for service connection compensation, we do not have jurisdiction to review that factual determination. *See* 38 U.S.C. § 7292(d)(2).